# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| JENNIFER NIENDORF, et al., | Case No.:  CV 09-175-S-REB |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER RE: DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP RULE 12(b)(6)** |
| vs. | |
| GOODING COUNTY, IDAHO, et al., | **(Docket No. 6)** |
| Defendants | |

Currently pending before the Court is Defendants' Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) (Docket No. 6).  Having carefully reviewed the record, considered oral arguments, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## BACKGROUND

Following his arrest on April 16, 2007, Jeramie Scott Caster was booked into the Gooding County Jail and placed into the care, custody, and control of the Gooding County Sherriff.  *See* Compl., ¶¶ 11-13 (Docket No. 2).  According to Plaintiffs, during the booking process, certain Defendants used physical force upon Mr. Caster, resulting in his injury.  *See id.* at ¶ 14.  Apparently, the booking process was never completed and, relevant to this action, a medical assessment regarding Mr. Caster was never undertaken or completed.  *See id.* at ¶ 15.

While in custody, Plaintiffs allege that Mr. Caster (1) disclosed to certain Defendants and (2) acted in such a manner as to make it known "that there was a significant likel[i]hood that

**MEMORANDUM DECISION AND ORDER - 1**

[Mr.] Caster may injure himself, or seek to take his own life." *See id*. at ¶ 16. On April 17,

2007, Mr. Caster was found hanging in his cell with a pay telephone cord wrapped around his

neck. *See id*. at ¶ 18. Mr. Caster was ultimately pronounced dead at the Gooding County

Memorial Hospital. *See id*. at ¶ 20.

Claiming that Mr. Caster's death "was the result of wrongdoing, gross negligence,

recklessness, and conduct that was an extreme deviation from the reasonable standards,"

Plaintiffs[1] bring six claims against Defendants: (1) Count I: Section 1983 Eighth Amendment

Claim for Deliberate Indifference to a Serious Medical Need or Risk; (2) Count II: Section 1983

Eighth Amendment Claim for Failure to Train; (3) Count III: Section 1983 Eighth Amendment

Claim for Failure to Screen; (4) Count IV: State Law Claim for Negligence; (5) Count V: State

Law Claim for Negligent Training/Supervision; and (6) Count VI: State Law Claim for Breach

of Statutory Duty. *See id*. at ¶¶ 28-50.

Defendants now move to dismiss each of Plaintiffs' claims, arguing that "Plaintiffs'

pleadings fall short of the plausible pleading standard . . . ." *See* Mem. in Supp. of Mot. to

Dismiss, p. 2 (Docket No. 6, Att. 1) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009)). According

to Defendants, Plaintiffs' allegations largely represent conclusory statements and/or legal

conclusions that are not to be assumed as true when considering their Motion to Dismiss. *See id*.

at p. 3 ("[T]he very few factual allegations made by the Plaintiffs in their Complaint do not

provide the sufficient plausibility of misconduct under the actual required elements of the causes

of action pled to survive a motion to dismiss.").

---

[1] Plaintiff, Penny Watson, is Mr. Caster's mother and the personal representative of Mr. Caster's estate. *See* Compl., ¶ 1 (Docket No. 2). Plaintiff, Jennifer Niendorf, is the mother of Mr. Caster's unemancipated minor children. *See id*. at ¶ 2.

**MEMORANDUM DECISION AND ORDER - 2**

**DISCUSSION**

**A.     Standard of Review for FRCP 12(b)(6) Motions**

FRCP 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). While a complaint attacked by an FRCP 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570.

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

In a more recent case, relied upon by Defendants (but entered *after* Plaintiffs' Complaint was originally filed), the Supreme Court identified two "working principles" that underlie *Twombly. See Iqbal,* 129 S.Ct. 1937, 1949 (2009). First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Id*. "[FRCP] 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with

nothing more than conclusions." *Id*. at 1950.  Second, only a complaint that states a plausible

claim for relief survives a motion to dismiss.  *Id*.  "Determining whether a complaint states a

plausible claim for relief will . . . be a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense."  *Id*.

A dismissal without leave to amend is improper unless it is beyond doubt that the

complaint "could not be saved by any amendment."  *Simpson*, 452 F.3d at 1046.  The Ninth

Circuit has held that "in dismissals for failure to state a claim, a district court should grant leave

to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

*Inc. v. Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).  "'The

issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

evidence to support the claims.'"  *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006)

(quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Here, the Court has carefully examined Plaintiffs' allegations in the context of *Iqbal's*

holding and Defendants' arguments.  At the outset, the Court is inclined to grant some credence

to these allegations, recognizing Plaintiffs' counsel's obligation to the Court that (1) the factual

allegations have (or will likely have) evidentiary support and, similarly, (2) the alleged claims

are warranted by existing law.  *See* Fed. R. Civ. P. 11.  Additionally, the Court understands that

actual discovery is just beginning and, as discussed later, the nature of certain discovery may be

difficult for Plaintiffs to readily obtain; in other words, the Court goes into its consideration of

this Motion with an assumption, drawn from counsel's responsibilities as an officer of the court,

that Plaintiffs' allegations extend beyond their counsel's imagination.

**MEMORANDUM DECISION AND ORDER - 4**

**B.      Count I: Plaintiffs' Section 1983 Eighth/Fourteenth Amendment Claim for Deliberate Indifference to a Serious Medical Need or Risk**

In light of the Eighth Amendment's prohibition against cruel and unusual punishment, prison officials have a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "A claim alleging failure to prevent an attempted suicide is based on the Eighth Amendment right to receive adequate medical care." *See Cotton v. Runnels*, 2008 WL 478410, *3 (E.D. Cal. 2008) (unreported) (citing *Olson v. Bloomberg*, 339 F.3d 730, 735-36 (8th Cir. 2003) (inmate suicide cases are analyzed using same framework applicable to failure to provide appropriate medical care); *Hott v. Hennepin County, Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001) ("We have generally treated allegations that officials failed to prevent jail suicides as claims for failure to provide adequate medical treatment."); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647 (5th Cir. 1996) ("Most circuits have endorsed a deliberate indifference inquiry as the measure of state officials' constitutional duty to safeguard the basic human needs of pretrial detainees, including protection from suicide."); *Popham v. City of Talladega*, 908 F.2d 1561, 1563 (11th Cir. 1990) (claim alleging failure to prevent jail suicide is "analogous to the failure to provide medical care."); *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) ("The right to have medical needs addressed includes the right to be protected from a known risk of suicide.")).[2]

---

[2]  Whether the alleged conduct amounts to a violation of either the Eighth Amendment or Fourteenth Amendment is a difference without any practical distinction at this stage of the litigation, as pointed out by this Court in *Young v. County of Boundary*, 2008 WL 3874637 (D. Idaho 2008) (unpublished). There, Chief U.S. District Judge B. Lynn Winmill commented:

> Plaintiff has asserted that the Officers' actions violated Young's 8th and 14th Amendment rights by denying Young proper medical treatment. Because Young was a pre-trial detainee, Plaintiff's claims

Such claims (premised on either the Eighth or Fourteenth Amendments) have both an objective and a subjective element: "(1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *See Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Matos ex. Rel. Matos v. O'Sullivan*, 335 F.3d 553, 556 (7th Cir. 2003)); *see also Young v. County of Boundary*, 2008 WL 3874637, *3 (D. Idaho 2008). Where the harm at issue is a suicide, the second, subjective, deliberate indifference prong of an Eighth Amendment claim requires a dual showing that a named defendant: "(1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *See Cotton*, 2008 WL 478410 at *3 (citing *Collins*, 462 F.3d at 761).

1.   First Element:  The Alleged Harm is Sufficiently Serious and a Substantial Risk to Mr. Canter's Health or Safety

There is no question that the tragedy of Mr. Caster's suicide necessarily satisfies the first, objective component of an Eighth Amendment Claim - that is, the alleged harm is "sufficiently serious." *See, e.g.*, *Sanville v. McCaughtry*, 266 F.3d 724 (7th Cir. 2001). In *Sanville*, the plaintiff alleged that the conditions of a prisoner's incarceration were such that there was a substantial risk that the prisoner would commit suicide and that the defendants were deliberately

---

for denial of medication or treatment are analyzed under the 14th Amendment.  This distinction is not of great significance, however, because the 14th Amendment analysis imposes the same duty as the 8th Amendment's protection against cruel and unusual punishment.

*See id.* at *3 (internal citations omitted).

**MEMORANDUM DECISION AND ORDER - 6**

indifferent to this risk.  *See id.* at 733.  Responding to a motion to dismiss the plaintiff's Eighth Amendment claim, the Seventh Circuit held in no uncertain terms:

> It goes without saying that "[s]uicide is a serious harm."  In this case, not only was there a risk of serious harm but that harm actually materialized - [the prisoner] committed suicide.  It would be difficult to think of a more serious deprivation than to be deprived of life, and thus plaintiff's claim clearly satisfies the first element.

*See id.* at 733-34 (internal citations omitted); *see also Vann v. Vandenbrook*, 596 F. Supp. 2d 1238, 1242 (W.D. Wis. 2009) ("Suicide and suicide attempts pose a serious risk of harm to a prisoner's health and safety.  Unlike traditional medical and mental illnesses, the harm is created by the prisoner and requires those supervising his or her incarceration to intervene."); *Fahy v. Page*, 2007 WL 54064, *4 (N.D. Ill. 2007) (unreported) ("In the case of suicide, the first element [of an Eighth Amendment claim] is automatically met . . . .").  Therefore, it is Mr. Caster's suicide itself that satisfies the first element of Plaintiffs' Eighth Amendment claim for deliberate indifference to a serious medical need or risk.  Accordingly, the Court rejects Defendants' contention that "Plaintiffs do not sufficiently allege that [Mr.] Caster posed a clear actual risk of injury to himself or others during the time he was in the Gooding County Jail.  *See* Mem. in Supp. of Mot. to Dismiss, p. 4 (Docket No. 6, Att. 1).

    2.    <u>Second Element: Plaintiffs Sufficiently Allege that the Individual Defendants Were Deliberately Indifferent to the Substantial Risk to Mr. Caster's Health and Safety</u>

Plaintiffs allege that the individual Defendants, Christine M. Velasquez and Justin L. Kimball, knew or should have known that Mr. Caster was at a substantial risk of committing suicide.  *See* Compl., ¶ 16 (Docket No. 2) ("That while in the custody of the Gooding County Sheriff, [Mr.] Caster made disclosures to Defendant, Christine M. Velasquez, [and] Defendant,

**MEMORANDUM DECISION AND ORDER - 7**

Justin L. Kimball . . ., and acted in such a manner, as to make it known that there was a significant likel[i]hood that [Mr.] Caster may injure himself, or seek to take his own life."). Plaintiffs go on to allege that these individual Defendants "fail[ed] to take reasonable steps to prevent [Mr.] Caster from injuring himself or committing suicide" and, in doing so, "act[ed] with deliberate indifference to a serious medical need . . . ." *See id*. at ¶¶ 17 & 30.

In response, Defendants rely on *Iqbal*, arguing that Plaintiffs' stark allegations are not sufficiently specific to state a  Section 1983 Eighth Amendment Claim for Deliberate Indifference to a Serious Medical Need or Risk:

> [T]his Court cannot determine the Plaintiffs' claims are "plausible on their face" because the court lacks the essential factual allegations it needs to determine whether it is plausible that [Mr.] Caster's alleged disclosures and actions would have put any of the named Defendants on notice regarding the possibility of his suicide.   Where the Plaintiffs have made no other allegations suggesting deliberate indifference other than the unknown disclosures and actions by [Mr.] Caster the night he was incarcerated as alleged in paragraph 16 of their Complaint, the plausibility of the Plaintiffs' entitlement to relief hinges singularly on the content of those disclosures and actions, which content is altogether lacking from the pleadings.

*See* Mem. in Supp. of Mot. to Dismiss, pp. 5-6 (Docket No. 6, Att. 1).  Simply put, Defendants argue that, while Plaintiffs may have formulaically recited the elements of a cause of action, under *Iqbal*, the absence of any further specificity morphs their allegations into bare legal conclusions, unsupported by any factual allegations.  *See id*. at pp. 6-7 ("Upon the actual substance of those 'disclosures' and actions hinges the ability of the Court to determine the facial plausibility of all of the Plaintiffs' claims, and the court cannot do so without that information. . . . . [W]hen the Court takes away all assertions in the Plaintiffs' Complaint that are no more than legal conclusions or unsupported conclusory statements with regards to Plaintiffs' Count I, there are no valid factual allegations which support Plaintiffs' claim.").

**MEMORANDUM DECISION AND ORDER - 8**

*Iqbal*, while still somewhat unsettled in its application within the Ninth Circuit, may have raised the bar for stating a claim under FRCP 8, but, in the Court's mind, not to the extent proposed by Defendants here. Present throughout the majority's opinion in *Iqbal* was the fact that the petitioning government officials faced an unprecedented terrorist attack on American soil, "perpetrated by 19 Arab Muslim hijackers." *See Iqbal*, 129 S.Ct. at 1951. In the absence of additional facts suggesting discriminatory intent, the majority found the respondent's claims overcome by the "obvious alternative explanation" – namely, that the respondent's arrest was "likely lawful and justified by [petitioner's] nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts." *See id*. ("As between that 'obvious alternative explanation' for the arrests . . . and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." (Internal citations omitted)).

With this framework in mind, answering whether a complaint states a plausible claim under *Twombly* and its progeny, including *Iqbal*, is a relative measure. "Allegations become 'conclusory' where they recite only the elements of the claim and, at the same time, the court's commonsense credits a far more likely inference from the available facts." *See Chao v. Ballista*, 630 F. Supp. 2d 170, 177 (D. Mass. 2009) (citing *Maldonado v. Fontanes*, 568 F.3d 263, 268 (P.R. 2009)). Thus, *Iqbal's* framework, analysis, and ultimate application turn largely on "the full factual picture, the particular cause of action, and the available alternative explanations." *See Chao*, 630 F. Supp. 2d at 177. Viewed in this light - "the totality of the allegations through the lens of judicial experience and common sense" (*see F.T.C. v. Innovative Marketing, Inc.*, 2009 WL 2959680, *7 (D. Md. 2009)) - Plaintiffs' allegations that the individual Defendants knew Mr. Caster was at a substantial risk of committing suicide, yet intentionally disregarded

that risk, are more than "an unadorned, the-defendant-unlawfully-harmed-me accusation;" they allow this Court "to draw the reasonable inference that the [individual Defendants] [are] liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 50).[3]  To be sure, during oral argument, it became clear to all that the allegedly necessary "substance" of Mr. Caster's conduct is, alas, in the possession of either the deceased or Defendants themselves which, thus, necessarily puts Plaintiffs in a "Catch-22" and hampers them from incorporating the specificity Defendants now argue is required.

This is most certainly not a finding of liability or, likewise, any indication of the merits of Plaintiffs' claim; rather, at this preliminary stage of the litigation, Plaintiffs are permitted to proceed with Count I of their Complaint.

## C.    Count II: Plaintiffs' Section 1983 Eighth/Fourteenth Amendment Claim for Failure to Train

Plaintiffs bring § 1983 claims, premised upon an alleged failure to train, against both Defendant Shaun Gough - in his official capacity as Sheriff for Gooding County and in his individual capacity - and Defendant Gooding County.  *See* Compl. at ¶ 33 (Docket No. 2).  The Ninth Circuit has stated that "a failure to train police officers may serve as the basis for liability under § 1983 where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact."  *See Gibson v. County of Washoe*, 290 F.3d 1175, 1194 (9th Cir. 2002) (internal quotations and citations omitted).

---

[3]  It is worth mentioning here that Form 11 within the "Appendix of Forms" to the Federal Rules of Civil Procedure, states that a negligence claim is sufficiently pled by saying simply: "On [Date], at [Place], the defendant negligently drove a motor vehicle against the plaintiff."  Notably, FRCP 84 provides that "[t]he forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate."  *See* Fed. R. Civ. P. 84.

**MEMORANDUM DECISION AND ORDER - 10**

1.    <u>Defendant Shaun Gough</u>

For Plaintiffs to bring a claim under § 1983 against Defendant Shaun Gough as an individual for failure to train, they must allege that the failure to train employees amounts to a policy or practice of failing to provide adequate training such that the policy or practice of failing to provide training amounts to deliberate indifference.  *See al-Kidd v. Gonzales*, 2008 WL 2795137, *5 (D. Idaho 2008) (unpublished) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989)).  Therefore, Defendant Shaun Gough will be held liable under § 1983 only if Plaintiffs show that "(1) [Defendant Shaun Gough] failed to supervise or train the officer, (2) a causal connection existed between the failure to supervise or train and the violation of [Mr. Caster's] rights, and (3) such failure to supervise or train amounted to gross negligence or deliberate indifference."  *See al Kidd*, 2008 WL 2795137 at *5 (citing *Baker, et al. v. Putnal, et al.*, 75 F.3d 190, 200 (5th Cir. 1996) ("For a police chief to be held liable under § 1983 there must be some connection between the chief's actions and the alleged constitutional violation.")).  Contrasted against this standard, Plaintiffs have stated a claim against Defendant Shaun Gough.

Plaintiffs' Complaint tracks the above-referenced elements of their § 1983 claim against Defendant Shaun Gough for failure to train, alleging:

> Defendant, Shaun Gough, intentionally committed acts which resulted in the depr[i]vation of [Mr.] Caster's right to be secure from cruel and unusual punishment, and/or secure from deprivation of life or liberty without due process, by [1] failing to train or supervise Defendant Christine M. Velasquez, Defendant Justin L. Kimball, and/or John does 1 through 10; [2] there is a ca[u]sal connection between the failure to train or supervise and the violation of [Mr.] Caster's rights, and [3] said Defendant's failure to train or supervise constituted a deliberate indifference to [Mr.] Caster's constitutional rights.

*See* Compl., ¶ 34 (Docket No. 2) (bracketed numbers added).[4]  Again, similar to the "Catch-22"

recognized within Count I, the possessors of the information needed to add more factual flesh to

these allegations are not Plaintiffs but, instead, Defendants.  It is only through discovery and,

likely, Defendants' anticipated Motion for Summary Judgment, where such allegations will be

fully vetted in a way that, given the current procedural posture, is impossible to do now when

considering Defendants' Motion to Dismiss.

While Defendants do not raise specific arguments against Plaintiffs' efforts to name Mr.

Gough as a defendant to Count II (*but see infra* at pp. 12-14), these allegations are nonetheless

sufficient to state a claim against Defendant Shaun Gough at this time.

2.    Defendant Gooding County

A local governmental entity, like Gooding County, may not be sued "except where it is

alleged that the execution of a government's policy or custom inflicted the injury of which a

plaintiff complains."  *See Murray v. Idaho*, 2007 WL 4403566, *8 (D. Idaho 2007)

(unpublished) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694

(1978)).  "That is, 'a municipality can be found liable under § 1983 only where the municipality

itself causes the constitutional violation at issue.'"  *See Murray*, 2007 WL 4403566 at *8 (quoting

*City of Canton*, 489 U.S. at 385).  There is no respondeat superior liability under § 1983.  *Id.*

Therefore, to state a § 1983 claim against Gooding County, the necessary elements

include the following:  "(1) [Mr. Caster] was deprived of a constitutional right; (2) the county

_____

[4]  Plaintiffs' Complaint further alleges that "Defendant, Shaun Gough, at all times
relevant herein, was the final decision maker regarding hiring, training, disciplining and
outfitting of Gooding County Sheriff's Department's personnel, including detention personnel,
and Gooding County's policies associated therewith."  *See* Compl., ¶ 25 (Docket No. 2).

had a policy;[5] (3) the policy amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation." *See Murray*, 2007 WL 4403566 at *8 (citing *Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001) (citing *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996) (internal quotation marks omitted))); *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 8 (Docket No. 6, Att. 1).

Relevant to their § 1983 claim against Defendant Gooding County for failure to train, Plaintiffs allege:

> That pursuant to standard operating procedure and practice, Defendant, Christine M. Velasquez was the only Gooding County deputy on duty at the time she discovered [Mr.] Caster, and declined to enter the cell and provide aid.
>
> That the practices and procedures of Gooding County in hiring, training, disciplining, and outfitting Gooding Sheriff's Department personnel, and the practices and procedures pertaining to the detention and incarceration of persons, were well settled and constituted a standard operating procedure of Gooding County.
>
> That, more specifically, Defendant, Gooding County's training program was not adequate to train its officers to respond properly to the usual and recurring situations with which they must deal, said Defendant was deliberately indifferent to the need to train its officers adequately, and the failure to provide training was a proximate cause of the depr[i]vation of [Mr. Caster's] constitution[al] rights.

*See* Compl., ¶¶ 19, 27, & 35 (Docket No. 2).  Defendants, again, challenge these allegations' lack of specificity in support of their efforts to dismiss the claim.  *See* Defs.' Mem. in Supp. of

---

[5] Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law.  *See Board of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) (citations omitted).

Mot. to Dismiss, pp. 9-10 (Docket No. 6, Att. 1) ("Plaintiffs have not identified any actual and specific written or unwritten policy that was created, adopted or practiced by Gooding County . . . ."; "Accordingly, Plaintiffs have failed to provide sufficient pleadings under FRCP 8 and *Iqbal* for Count II of the complaint, and this count should be accordingly dismissed."). Consistent with the allegations raised within Plaintiffs' first cause of action, however, the allegations offered here are likewise sufficient enough to put Defendants on notice of the at-issue claims.[6] Of course, as the case progresses and with the benefit of discovery, Defendants may very well find it appropriate to move for summary judgment;[7] until then, Plaintiffs have stated a claim.

**D.     Count III:  Section 1983 Eighth/Fourteenth Amendment Claim for Failure to Screen**

Hand-in-hand with their first two claims, Plaintiffs further allege that Mr. Caster's suicide was the consequence of Defendant Shaun Gough's and Defendant Gooding County's

---

[6] Defendants raise two additional arguments that are unpersuasive at this time.  First, Defendants argue that "Plaintiffs have also failed to allege that any Gooding County Jail official acted in accordance with any such policy or training in allegedly causing the death of [Mr.] Caster.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 10 (Docket No. 10).  Yet, at paragraph 19, Plaintiffs assert that, "pursuant to standard operating procedure and practice, Defendant, Christine M. Velasquez was the only Gooding County deputy on duty at the time she discovered [Mr.] Caster, and declined to enter the cell and provide aid."  *See supra* at p. 12.  Second, Plaintiffs state that "Plaintiffs have not sufficiently pled an underlying constitutional violation in Count I, and the Plaintiffs' pleadings here are insufficient to state a plausible cause of action." *See* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 10 (Docket No. 10).  However, both Counts seek recovery under § 1983 for alleged violations of the Eighth and/or Fourteenth Amendments based upon a claimed deliberate indifference to a serious medical need and failure to train - each in relation to Mr. Caster's ultimate suicide after incarcerated.

[7] Indeed, the four cases Defendants cite in support of their dismissal efforts (*see* Mem. in Supp. of Mot. to Dismiss, pp. 8-9 (Docket No. 6, Att. 1)) speak to situations procedurally beyond a motion to dismiss context.  *See City of Canton*, 489 U.S. 378 (following judgment in favor of detainee); *Monell*, 436 U.S. 658 (following judgment); *Tlamka v. Serrell*, 244 F.3d 628 (8th Cir. 2001) (motion for summary judgment); *Forgan v. Howard County*, 494 F.3d 518 (5th Cir. 2007) (following summary judgment).

**MEMORANDUM DECISION AND ORDER - 14**

failure to properly screen Defendant Christine M. Velasquez and Defendant Justin L. Kimball prior to being hired. *See* Compl., ¶¶ 37-41 (Docket No. 2). While recognizing that one individual defendant's liability for failure to screen may not necessarily equate to a defendant municipality's liability, the elements for such a claim still resemble the standard posed within *Canton*. *See Brown*, 520 U.S at 411 ("A plaintiff must demonstrate that a . . . decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."); *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 11 (Docket No. 6, Att. 1) ("In *Brown*, the Court found that liability under a § 1983 failure to screen claim must depend upon a *Canton*-like finding that a hiring official exercised deliberate indifference in making a hiring decision where there was clear and obvious risk of injury if the person were hired.").

As to Defendant Shaun Gough, Plaintiffs allege:

> Defendant, Shaun Gough, intentionally committed acts which resulted in the depr[i]vation of [Mr.] Caster's right to be secure from cruel and unusual punishment, and/or secure from deprivation of life or liberty without due process, in that said Defendant, in the hiring process, failed to screen Defendant Christine M. Velasquez [and] Defendant Justin L. Kimball . . .; there is a causal connection between the failure to screen and the violation of [Mr.] Caster's rights; and said Defendant's failure to screen in the hiring process, constituted a deliberate indifference to [Mr.] Caster's constitutional rights.

*See id*. at ¶ 39.

With respect to Defendant Gooding County, Plaintiffs similarly allege:

> Defendant, Gooding County's hiring and screening process was not adequate to screen potential employees to respond properly to the usual and recurring situations with which they must deal; said Defendant was deliberately indifferent to the need to screen potential employees adequately, and the failure to screen potential employees was the proximate cause of the depr[i]vation of [Mr.] Caster's right to be protected by the Constitution.

*See id*. at ¶ 40.

**MEMORANDUM DECISION AND ORDER - 15**

Plaintiffs are not now required to *prove* their failure to screen claim (*but cf.* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 11 (Docket No. 6, Att. 1) (". . . liability under a § 1983 failure to screen claim must depend upon . . . ."; ". . . in order to incur liability under a failure to screen claim, it must be shown that . . . .")); rather, Plaintiffs must simply *state* a claim. Despite Defendants' arguments that Plaintiffs' allegations offer little to no factual support (and while Plaintiffs may, in fact, have a difficult time actually *proving* such a claim),[8] the Court is content in holding that a claim has nonetheless been *stated* against both Defendant Shaun Gough and Defendant Gooding County for failure to screen. *See supra* at p. 15.[9]

**E.      Count IV: State Law Claim for Negligence**

In Idaho, "[t]he elements of a common law negligence action are (1) a duty, recognized by law, requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual loss or damage." *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank, N.A.*, 119 Idaho 171, 175-76 (Idaho 1991); *see also* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 13 (Docket No. 6, Att. 1). Here, Defendants do not deny the technical existence of each of these

_____

[8] *See Brown*, 520 U.S. at 410-411 ("[T]he risk from a single instance of inadequate screening of an applicant's background is not 'obvious' in the abstract; rather, it depends upon the background of the applicant. . . . . "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'").

[9] To summarize, with respect to Plaintiffs' constitutional claims, it is insufficient for Plaintiffs to state or infer, simply, that Mr. Caster, while in jail, died and, therefore, his constitutional rights were violated. More is needed under the Rules and under *Iqbal*. Even under *Iqbal's* "more" requirement, Plaintiffs have provided enough to put Defendants on notice of the alleged constitutional violations to overcome Defendants' Motion to Dismiss.

**MEMORANDUM DECISION AND ORDER - 16**

alleged elements within Plaintiff's negligence claim,[10] but instead argue that Plaintiffs' "allegations amount to nothing more than hollow legal conclusions with no factual allegations to support them." *See* Mem. in Supp. of Mot. to Dismiss, p. 13 (Docket No. 6, Att. 1). Plaintiffs' allegations, as scant as they may be, are sufficient to overcome Defendants' challenge at this time. *See, e.g.*, *supra* at p. 9, fn. 3 (discussing FRCP's Form 11 and sufficient "Complaint for Negligence"); *see also supra* at pp. 7-10.

Again, this finding is not an implicit blessing by the Court as to the merits of Plaintiffs' claim but, rather, a mere finding that Plaintiffs have stated a claim. Going forward, Plaintiffs must address Defendants arguments and, ultimately, *establish* the essential elements of its negligence claim, lest it risk that claim's (and perhaps other claims') dismissal on summary judgment. In the meantime, however, Defendants' Motion to Dismiss is denied.

**F.      Count V: State Law Claim for Negligent Training/Supervision**

Raising the same arguments against Plaintiffs' § 1983 claim for failure to train, Defendants assert once more that "Plaintiffs' state law claim for negligent training fails to allege facts that would plausibly lead a court to believe that the Plaintiffs are entitled to relief under this claim." *See* Defs.' Memo. in Supp. of Mot. to Dismiss, p. 15 (Docket No. 6, Att. 1). Because these arguments mirror those previously made, the Court references and now incorporates the rationale offered in rejecting Defendants' efforts to dismiss Count II of Plaintiffs' Complaint.

---

[10]   Defendants acknowledge that "'every person, in the conduct of his or her business, has a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others.'" *See* Mem. in Supp. of Mot. to Dismiss, p. 13 (Docket No. 6, Att. 1) (citing *Boots ex rel. Boots v. Winters*, 145 Idaho 389, 393 (Idaho Ct. App. 2008)). Further, following the "general factual allegations" (*see* Compl., pp. 3-5 (Docket No. 2)), Plaintiffs allege that "Defendants breached a duty of care to prevent unreasonable, foreseeable risks of harm to [Mr.] Caster;" and "that the actions of the Defendants were a substantial factor and direct and proximate cause of [Mr.] Caster's injuries, death and damages." *See id.* at ¶¶ 43 & 44.

*See supra* at pp. 10-13.  For these same reasons, Count V of Plaintiffs' Complaint will not be dismissed at this time.

**G.     Count VI: State Law Claim for Breach of Statutory Duty**

"In Idaho, it is well established that statutes and administrative regulations may define the applicable standard of care owed, and that violations of such statutes and regulations may constitute negligence *per se*."  *See Sanchez v. Galey*, 112 Idaho 609, 617 (1986).  Here, Plaintiffs argue that "Defendants breached a duty of care to provide [Mr.] Caster with necessities, such as medical care, as set forth in Idaho Code § 20-612."  *See* Compl., ¶ 49 (Docket No. 2).

Idaho Code § 20-612 states in relevant part:

> It shall be the duty of the board of county commissioners to furnish all persons committed to the county jail with necessary food, clothing and bedding, and medical care as provided in section 20-605, Idaho Code, and the board of county commissioners is authorized to pay therefor out of the county treasury under such rules and regulations as they may prescribe.

*See* I.C. § 20-612.  In addition to raising the same arguments relative to Plaintiffs' state law claim for negligence (Count IV),[11] Defendants also argue that Idaho Code § 20-612 "fails to identify any statutory breach of duty applicable to the Plaintiffs' claims."  *See* Defs.' Mem. in Supp. of Mot. to Dismiss, p. 16 (Docket No. 6, Att. 1).  Specifically, Defendants assert that Idaho Code § 20-612 has never been interpreted by Idaho courts as providing a basis for a negligence claim; rather, according to Defendants, Idaho Code § 20-612 and the referenced

---

[11]  In this respect, the Court references and now incorporates the rationale offered in rejecting Defendants' efforts to dismiss Count IV of Plaintiffs' Complaint.  *See supra* at pp. 16-17.  With this in mind, Count VI will not be dismissed for these reasons at this time.

Idaho Code § 20-605 "relate to the financial funding of the incarceration of inmates within county jails by the county government." *See id.*

To replace a common law duty of care with a statutory duty, the following elements must be met:

> (1) the statute or regulation must clearly define the required standard of conduct; (2) the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; (3) the plaintiff must be a member of the class of persons the statute or regulation was designed to protect; and (4) the violation must have been the proximate cause of the injury.

*See Nation v. State, Dept. of Correction*, 144 Idaho 177, 190 (Idaho 2007) (quoting *Ahles v. Tabor*, 136 Idaho 393, 395 (Idaho 2001)). Defendants make two particular challenges. First, Defendants argue that Idaho Code § 20-612 does not clearly define Defendants' required standard of conduct. *See* Defs.' Reply Mem., p. 10 (Docket No. 18). Second, Defendants argue that Idaho Code § 20-612 was not enacted with the intent of preventing the type of harm alleged by Plaintiffs here. *See id.* The Court agrees.

All sections of applicable statutes must be read together to determine the legislature's intent. *See Bannock County v. City of Pocatello*, 110 Idaho 292, 294 (Idaho 1986). When looking to the incorporated Idaho Code § 20-605, Defendants correctly point out that these statutes "plainly deal[ ] with a county's duty to fund the care of inmates, and not with the specific degree or type of medical care to be provided." *See* Defs. Reply Mem., p. 10 (Docket No. 18); *see also Bannock County*, 110 Idaho at 295 (". . . [Idaho Code] § 20-612 places on the county commissioners the complete *duty to pay*, with county funds, for all prisoners housed in that county." (Emphasis added)); *see also* I.C. § 20-605 (entitled: "Costs of Confinement" while

**MEMORANDUM DECISION AND ORDER - 19**

repeatedly referencing a county's fiduciary obligations); *but see Marlor v. Madison County, Idaho*, 50 Fed. Appx. 872 (9th Cir. 2002) (unpublished) (upholding Chief District Judge B. Lynn Winmill's summary dismissal of plaintiff's Idaho Code § 20-612 claim on immunity grounds, not the absence of a statutory duty to provide medical care).[12]  Additionally, even when assuming that Idaho Code § 20-612 outlines a statutory duty applicable to the circumstances here, Plaintiffs offer no supporting allegations in the appropriate, fiduciary context.  *See* Defs.' Reply Mem., p. 10 (Docket No. 18) ("The Plaintiffs have made no allegations regarding inadequate funding by Gooding County.").

Relatedly, an examination of the two statutes reveals that they apply to a county's fiscal obligations; that is, who/whom must bear the expenses of, among other things, a prisoner's medical care while incarcerated.  This does not equate to a particular standard of medical care.  Therefore, these statutes do not logically appear to have been enacted with the intent to prevent a prisoner's suicide, as is the case here.

Because Idaho Code § 20-612 does not outline a statutory duty of care relative to a prisoner's incarceration, it cannot support Count VI of Plaintiffs' Complaint based upon the

---

[12]  However, with respect to whether Idaho Code § 20-612 actually creates a statutory duty, Chief District Judge Winmill pointed out that:

> Idaho Code section 20-612 allocates costs for inmates' medical care and other expenses.  *The Court expresses no opinion on whether this statute creates a basis for a statutory negligence action under Idaho law.*  We assume only for the purpose of discussing immunity under Idaho Code section 6-904B that it does provide a cause of action.

*See Marlor*, 50 Fed. Appx. at *2 (Emphasis added).  Therefore, there remains no offered authority supporting Plaintiffs' ability to impose a statutory duty premised upon Idaho Code § 20-612 upon Defendants.

**MEMORANDUM DECISION AND ORDER - 20**

allegations asserted to date. For this reason, Plaintiffs' breach of statutory duty claim is dismissed without prejudice.

## ORDER

Based upon the foregoing, IT IS HEREBY ORDERED, that Defendants' Motion to Dismiss Pursuant to FRCP Rule 12(b)(6) (Docket No. 6) is GRANTED, in part, and DENIED, in part, as follows:

1.      Defendants' Motion to Dismiss as to Count I is DENIED;

2.      Defendants' Motion to Dismiss as to Count II is DENIED;

3.      Defendants' Motion to Dismiss as to Count III is DENIED;

4.      Defendants' Motion to Dismiss as to Count IV is DENIED;

5.      Defendants' Motion to Dismiss as to Count V is DENIED; and

6.      Defendants' Motion to Dismiss as to Count VI is GRANTED. Count VI of Plaintiffs' Complaint is DISMISSED without prejudice.

DATED:  **February 25, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge